IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| JENNIFER AMI HOFFMAN, ESQ. | * |
| | * MISC. NO.: 1:16-mp-00001MDF |
| ANDREW A. VARA, | * |
| Acting United States Trustee, | * |
| Movant | * |
| | * |
| v. | * |
| | * |
| JENNIFER AMI HOFFMAN, ESQ., | * |
| Respondent | * |

## OPINION

Before me is the Complaint of Andrew A. Vara, Acting United States Trustee (the "UST"), requesting that an order be entered suspending Jennifer Ami Hoffman, Esq. ("Respondent") from the practice of law before this Court and imposing other relief.[1]

### I. Procedural History

On February 22, 2016, the UST filed the Complaint in this miscellaneous proceeding and, thereafter, the Court issued an order setting a March 8, 2016 answer date and scheduling a hearing for March 22, 2016. The Complaint and Order were served on Respondent at her last known mailing address in Harrisburg, Pennsylvania. At the hearing on March 22, Respondent did not appear. Dorothy Mott, Esq., appeared at the hearing to provide information regarding Respondent, but did not enter an appearance on her behalf. Ms. Mott requested that I continue the matter so that she could consult with Respondent and perhaps enter her appearance on

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core, non-*Stern* proceeding under 28 U.S.C. § 157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

Respondent's behalf. I granted the request, and a continued hearing was scheduled for April 18, 2016.

Respondent neither filed an answer to the Complaint nor retained counsel to represent her interests. On April 18, 2016, the UST requested an entry of default judgment against Respondent asserting that she had been properly served and had failed to file an answer or otherwise respond to the Complaint.

## II. Factual Findings[2]

Respondent has been admitted to practice before the Bankruptcy Court for the Middle District of Pennsylvania since 2003. In November 2015, bankruptcy debtors Sean R. Keefer and Karen L Keefer (the "Keefers") alleged that Respondent failed to inform them of a continued creditors' meeting scheduled in their case. The Keefers originally filed a Chapter 13 case, but when they were unable to make the plan payments, they elected to convert their case to Chapter 7. The creditors' meeting in the converted case was adjourned by the Chapter 7 trustee, but the Keefers were unaware that the meeting had been rescheduled. Understandably, they failed to appear. The Chapter 7 trustee thereafter moved to dismiss their case.[3] Unable to make contact with Respondent, the Keefers filed a letter opposing the motion to dismiss and describing their efforts to contact their attorney. The Chapter 7 trustee concurred in the motion, and when the

---

[2]"[A]llegations in a complaint, other than those relating to the amount of damages, are deemed admitted if the defendant fails to deny them in a timely fashion." *Davis v. Metro. Life Ins. Co.*, No. 1:13-CV-2741, 2015 WL 574616, at *5 (M.D. Pa. Feb. 11, 2015) (citing Fed. R. Civ. 8(b)(6)).

[3]The Keefers' bankruptcy case is docketed at Case No. 1:12-bk-04122.

2

Keefers appeared at the continued creditors' meeting on December 18, 2015, the meeting was concluded.

After becoming aware of Respondent's failure to communicate with her clients, the UST sent a letter to Respondent demanding that on or before November 30, 2015 she provide an explanation for why she had failed to communicate with her clients. Respondent did not respond to the letter. Subsequently, the UST determined that Respondent's license to practice law was subject to administrative suspension. After this discovery, the UST again wrote Respondent requesting that she contact the UST to discuss the status of her open bankruptcy cases, her intentions regarding the representation of her clients in the future, and any personal difficulties that were hindering her ability to represent her clients in their pending cases. At the time the UST contacted Respondent she was counsel of record in thirty-one open cases in the district, most of which were Chapter 13 cases. Of the thirty-one cases, twelve were filed in 2010, ten were filed in 2011, eight were filed in 2012 and one was filed in 2013.

In the meantime, other members of the bar agreed to assist Respondent's clients in completing their cases. Ms. Mott has entered her appearance in nineteen of the cases, Michael Csonka, Esq. has entered his appearance in three cases, John Frey, Esq. has entered his appearance in one case and Aaron Neuharth, Esq. has entered his appearance in three cases. In four other cases, the debtors were able to complete the necessary requirements to obtain a discharge without representation. Only one case is now pending in which debtors have not obtained counsel and have not yet received a discharge.[4]

---

[4] I am grateful for and appreciative of the efforts made by Mr. Csonka, Mr. Frey, Mr. Neuharth and, especially Ms. Mott, as well as the UST, to assist Ms. Hoffman's former clients in achieving the goals they expected to obtain when they filed for bankruptcy relief.

At the hearing on March 8, Ms. Mott informed the Court that while she was not formally representing Respondent, she was aware that Respondent had experienced a series of crises in her personal life and was simply unable to cope with maintaining her practice. While this undoubtedly is a difficult time for Respondent, it does not excuse her from simply walking away from her clients. She neither informed her clients that she no longer intended to practice law, nor did she refer her clients to new counsel.

Independently of the UST's Complaint, on February 8, 2016, I issued an order directing Respondent to appear on March 8, 2016 and show cause why she should not be required to disgorge attorneys' fees she had received in the case of Eric K. Keefer and Carrie I. Keefer ("Debtors").[5] Debtors' case was closed after the Chapter 13 trustee filed a final report. Debtors were not granted a discharge, however, because they had failed to file several required certifications regarding financial management and domestic support obligations. Unable to contact Respondent for assistance, Debtors filed the certifications and moved to reopen their case pro se. After I granted the motion, Debtors were granted a discharge.

When Respondent failed to appear at the show cause hearing on March 8, 2016, I entered an order requiring her to disgorge all compensation she had received from Debtors within thirty days. Under the terms of the order, Respondent was to certify compliance with the Court. Failure to comply with the disgorgment order subjected Respondent to the possibility of further sanctions being imposed. Respondent has not filed a certification of compliance thus I must assume that she has failed to disgorge the funds. Therefore, in addition to the cases cited by the UST, I also

---

[5] Debtors' bankruptcy case is docketed at Case No. 1:10-bk-05127.

4

Case 1:16-mp-00001-MDF    Doc 9    Filed 05/05/16    Entered 05/05/16 13:00:57    Desc
                         Main Document         Page 4 of 10

will consider Respondent's non-compliance with the disgorgement order when I determine whether the sanctions requested by the UST are justified.

### III. Discussion

Federal courts possess the inherent power to manage their cases and court proceedings and to protect the integrity of the judicial system. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-47 (1991) *cited in In re Brooks-Hamilton*, 400 B.R. 238, 246 (9th Cir B.A.P. 2008). The Local Bankruptcy Rules ("L.B.R.") authorize judges of this Court to discipline attorneys who appear before it. L.B.R. 2090-2(a). Bankruptcy courts possess both inherent authority to suspend or disbar attorneys who practice before them and specific statutory authority to discipline attorneys under 11 U.S.C. § 105(a). *See In re Snyder*, 472 U.S. 634, 643 (1985); *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995); *In re Crayton*, 192 B.R. 970, 976 (9th Cir. B.A.P. 1996). *See also* L.B.R. 2090-2.

Before an attorney may be sanctioned, a court must provide the attorney with notice of the alleged misconduct and an opportunity to respond to the allegations. *Fellheimer,* 57 F.3d at 1225. Respondent has been provided with notice detailing the attempts made by one client to contact her. Further, Respondent was contacted by the UST regarding her failure to communicate with her clients, and she has failed to respond. Although Ms. Mott did not enter an appearance on Respondent's behalf, she did state at the hearing on the Complaint that she had communicated with Respondent through members of her family. Therefore, I find that Respondent has received adequate, particularized notice of the allegations against her as set forth in the Complaint. Nevertheless, Respondent has failed to respond either directly or through counsel to these allegations.

5

Rule of Professional Conduct 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." 204 Pa. Code § 81.4.1.3. The parameters of this duty are further refined in the comment to the rule, which provides that "a lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." Pa. Rule Prof. Conduct 1.3, Comment, *Id.* Effective representation of a client requires that a lawyer communicate regularly with her client.

Rule 1.4 describes a lawyer's responsibility to communicate as follows:

a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; . . .

204 Pa. Code § 81.4.1.4. As the documentation submitted by the UST in support of his motion demonstrates, Respondent failed to communicate with at least thirty-one of her clients as required by Rule 1.4. Several clients were required to reopen their cases to obtain a discharge, others needed assistance after their cases were converted from Chapter 13 to Chapter 7, and still others required assistance in modifying their Chapter 13 plans.

Although not specifically adopted as the standard in this circuit, many courts, including the Ninth Circuit, have relied on the disciplinary standards developed by the American Bar

6
Case 1:16-mp-00001-MDF    Doc 9    Filed 05/05/16    Entered 05/05/16 13:00:57    Desc
Main Document    Page 6 of 10

Association ("ABA").[6] Under the ABA's Standards for Imposing Lawyer Sanctions (the "Standards"), when imposing lawyer discipline, a court should consider: "(1) whether the duty violated was to a client, the public, the legal system or the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) whether the lawyer's misconduct caused a serious or potentially serious injury; and (4) whether aggravating factors or mitigating circumstances exist." *Brooks-Hamilton*, 400 B.R. at 252. Aggravating factors include whether the attorney has been subject to prior disciplinary actions, has engaged in a pattern of misconduct, or whether the attorney has refused to acknowledge the wrongful conduct. *Crayton*, 192 B.R. at 981. Mitigating factors include the absence of prior disciplinary proceedings, the presence of personal problems, inexperience, or good faith attempts to correct deficiencies or errors. *Id.*

Respondent has failed to diligently represent her clients. She has ignored an order of this Court directing her to disgorge funds. Further, even after having been contacted by the UST about the importance of communicating with her clients, she failed to do so. Although there is no evidence to suggest that she intended to harm her clients, at some point she determined that she was no longer interested in representing their interests. Unfortunately, she failed to communicate this intention to her clients or to seek permission to withdraw from representation. The consequence of her actions were serious and, in each case, jeopardized the ability of the client to obtain a discharge.

---

[6]ABA Standards for Imposing Lawyer Sanctions, approved 1986, amended 1992 *available at* http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/corrected_standards_sanctions_may2012_wfootnotes.authcheckdam.pdf (last visited May 4, 2016).

As a mitigating factor, Ms. Mott represented to the Court that Respondent has faced a series of significant personal problems. It is appropriate for a court to consider factors such as emotional and personal difficulties experienced by a lawyer when deciding the type of discipline to impose. But in this case, Respondent did not take the opportunity either personally or through counsel to explain why she abandoned her clients. Sadly, other parties were required to step into the breach to protect their interests.

It is for these reasons that I find it appropriate to grant the UST's request that Respondent be suspended from practice. As a preliminary matter, she must be suspended at this time because she is under administrative suspension by the Pennsylvania Supreme Court. Under Local Rule 83.8.1.2 of the District Court for the Middle District of Pennsylvania, an attorney may be admitted to practice before the court if the attorney is a member of the bar of the Pennsylvania Supreme Court and is in good standing in the jurisdiction. Under L.B.R. 2090-1(a), an attorney may not be admitted to practice before the bankruptcy court unless they have been admitted to practice before the District Court. Respondent has been administratively suspended by the Supreme Court and, thus, is not eligible to practice in federal court in Pennsylvania at this time. Therefore, at a minimum, Respondent must be barred from practicing before this Court until she is reinstated by the state court.

Information provided through the Disciplinary Board for the Supreme Court suggests that Respondent has been suspended because she failed to obtain the required continuing legal education. This information supports the conclusion that Respondent has decided to abandon her practice. However, if she changes her mind, she could be reinstated in good standing immediately as her suspension is attributable to a technical non-compliance with practice

requirements. Fulfillment of a continuing education requirement, however, does not address her lack of diligence in handling her clients' affairs. Respondent's failure to exercise professional responsibility as an attorney is a more serious infraction. While appearing as an officer of this Court, Respondent failed to exercise diligence in the representation of her clients' interests and failed to communicate with them regarding matters critical to obtaining a bankruptcy discharge. Although none of Respondent's clients have suffered significant harm, it has only been through the efforts of other lawyers that this harm has been avoided.

### VI. Conclusion

Disciplinary proceedings are not intended to punish the offender, "but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice." *Office of Disciplinary Counsel v. Duffield*, 537 Pa. 485, 500, 644 A.2d 1186, 1193 (1994) (citing *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975)). ABA Standard 2.3 advises that suspension should be for a minimum of six months, but no greater than three years. Because Respondent has not been the subject of any prior disciplinary proceedings before the Bankruptcy Court of the Middle District of Pennsylvania, she will be suspended from practicing before the Court for six months regardless of whether or not she is reinstated by the Supreme Court in the interim. After this time period, she may move this Court for reinstatement. As a condition of reinstatement, however, Respondent must demonstrate that she is a member in good standing of the Pennsylvania bar and that she is prepared to competently and diligently represent her clients. Further she must document that she has complied with the Order entered in the Eric K. Keefer and Carrie I. Keefer case filed at Case No. 1:10-bk-05127 directing her to disgorge all

9

Case 1:16-mp-00001-MDF    Doc 9    Filed 05/05/16    Entered 05/05/16 13:00:57    Desc
Main Document    Page 9 of 10

compensation received for services in this case. An appropriate order suspending Respondent and delineating the terms under which Respondent may seek reinstatement follows.

By the Court,

*Mary D France*
Chief Bankruptcy Judge

Dated: May 5, 2016